KAREN P. HEWITT
United States Attorney
RAVEN M. NORRIS
Assistant U.S. Attorney
California State Bar No. 232868
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7157
Facsimile: (619) 557-5004

Attorneys for the Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MOHAMED BAHRIZ, | ) | Case No. 08cv0342 |
| | ) | MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY TO REMAND TO UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL M. PIERRE, District Director, San Diego U.S. Citizenship and Immigration Services Field Office, et al., | ) | Date:   June 6, 2008 |
| | ) | Time:  1:30 p.m. |
| | ) | Crtrm: 16 |
| | ) | The Honorable Jeffrey T. Miller |
| Defendants. | ) | **[Defendants Do Not Request Oral Argument]** |

# I. INTRODUCTION

Plaintiff requests that the Court compel Defendants to complete the processing of his naturalization application, however, he has failed to establish the Court's subject matter jurisdiction or to state a claim upon which relief can be granted.  The Complaint is therefore subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Plaintiff has not been examined by Defendant U.S. Citizenship and Immigration Services (USCIS) regarding his application for naturalization, and by federal regulation, cannot be examined until USCIS receives the results of his name check pending with Defendant Federal Bureau of Investigation (FBI).  Defendants request that the Court dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.  Alternatively, if the Court finds jurisdiction, Defendants request that the Court remand the matter to USCIS for adjudication of the application once the necessary background investigation and subsequent examination are completed.

# II. STATEMENT OF FACTS

Plaintiff, a native and citizen of Algeria, was granted Lawful Permanent Resident status on May 23, 2001. See Declaration of Celia Kynoch, (Ex. A), ¶ 4.[1/]  On March 29 2004, Plaintiff filed an his first Application for Naturalization (N-400) based on his marriage to a U.S. Citizen.  Id.  On April 9, 2004, the FBI received a name check request from USCIS and completed the name check request on October 2, 2004.  See Declaration of Michael Cannon (Ex. E) ¶ 43.  On October 22, 2004, USCIS interviewed Plaintiff in connection with his N-400 application but Plaintiff voluntarily withdrew his N-400 application. Ex. A, ¶ 4.  Accordingly USCIS administratively closed Plaintiff's N-400. 8 C.F.R. § 335.6.

On April 11, 2006, Plaintiff filed a second N-400 application.  See Ex. A, ¶ 4.  On or about April 29, 2006, USCIS submitted and FBI received a name check request in connection with Plaintiff's application. Ex. A, ¶ 22; Ex. E, ¶ 44.  To date, the namecheck request remains pending.  See Ex. E, ¶ 44.  On June 26, 2006, USCIS initiated and received Plaintiff's FBI fingerprints check results.  See Ex. A, ¶ 22.  In continuing to process Plaintiff's application, USCIS scheduled Plaintiff to be reprinted on

---

[1/]    When considering a motion to dismiss pursuant to Rule 12(b)(1), the district court may review evidence outside the pleadings to resolve factual disputes concerning the existence of jurisdiction without converting the motion to one for summary judgment.  See, e.g., Land v. Dollar, 330 U.S. 731, 735 n.4, (1947) ("when a question of the District Court's jurisdiction is raised...the court may inquire by affidavits or otherwise, into the facts as they exist."); Biotechs Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment).

April 26, 2008. Id. Plaintiff's N-400 is currently pending because the FBI name check is incomplete and ongoing, his N-400. Id. at ¶ 23; Ex. E, ¶ 44. Further, because Plaintiff's FBI name check has not been completed, he has not been examined on his pending N-400. See Ex. A, ¶ 23.

### III. ARGUMENT

A.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION

     1.     Background Investigation Is Incomplete and Ongoing and Administrative Examination May Not Yet Be Ordered

By statute, the Secretary of Homeland Security[2] is authorized to prescribe the scope and nature of the examination of naturalization applicants as to their admissibility to citizenship. 8 U.S.C. § 1443(a). Judicial review is limited to those applications that have been denied or not decided within 120 days of examination. See 8 U.S.C. §§ 1421(c) and 1447(a)-(b). Plaintiff's application has not been denied, nor has he been examined by USCIS. See Ex. A, ¶¶ 23-26. Thus, the Court does not have jurisdiction under 8 U.S.C. §§ 1421(c), 1447(a), or 1447(b).

After an application for naturalization is filed, the relevant regulations require USCIS to "conduct an investigation of the [naturalization] applicant." 8 C.F.R. § 335.1. In a situation where there has been no examination, the governing statutes and regulations do not provide a time frame for adjudication of a naturalization application. See 8 U.S.C. §§ 1443, 1446, 1447; 6 U.S.C. § 551(d); 8 C.F.R. § 335. Moreover, pursuant to the regulations enacted in the discretion of the Secretary of Homeland Security, the examination may only occur after the completion of extensive criminal background checks, and a "definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b); Ex. A, ¶ 23. USCIS is required to examine each applicant for naturalization.[3] See 8 U.S.C. § 1446(b). See 8 C.F.R. § 335.2(c). Here, Plaintiff's FBI name check is currently incomplete and ongoing. See Ex. A, ¶¶ 22-23; Ex. E, ¶ 44. Accordingly, no examination of Plaintiff has taken place. See Complaint, ¶ 8, 11; Ex. A, ¶ 23. Title 8 also fails to provide

---

[2]     On March 1, 2003, DHS and its USCIS assumed responsibility for the process of naturalization. 6 U.S.C. § 271(b). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d).

[3]     The examination takes place in the form of an interview with a USCIS officer and includes a test of English literacy, basic knowledge of the history and government of the United States, and questioning on the answers provided in the application itself.

1  a mechanism for judicial review of an application where the application has not been denied or if 120

2  days have not elapsed since the USCIS examination. See 8 U.S.C. §§ 1421(c); 1447. Because Plaintiff's

3  application has not been denied and he has not been examined, Plaintiff is not entitled to judicial review.

4  See 8 U.S.C. §§ 1447(a)-(b).

5        This District has addressed the effect of this regulatory provision on similar cases requesting

6  expedition. As the Court in Zhou v. Chertoff, No. 07cv0102-LAB, slip op. (S.D. Cal. Mar. 14, 2007),

7  attached as Exhibit F, noted,

8        Congress mandated in 1997 that the FBI investigate every applicant for
      naturalization and that USCIS await completion of those investigations before

9        rendering a decision with respect to any applicant. See Pub. L. No. 105-119, Title
      I, Nov. 26, 1997, 111 Stat. 2448. In particular, beginning in fiscal year 1998 and

10        thereafter, the then Immigration and Naturalization Service ("INS") (now USCIS)
      is prohibited from using any of the funds appropriated or available to it 'unless the

11        [CIS] has received confirmation from the (FBI) that a full criminal background check
      has been completed.'

12

13  Id., slip op. at 3 (citation and footnote omitted); see also Dairi v. Chertoff, No. 07cv1014, 2007 WL

14  3232503, *1 (S.D. Cal. November 1, 2007) ("[T]here appears to be no legal basis for the court to exercise

15  subject matter jurisdiction over the action to compel Defendants to proceed with the naturalization

16  interview."); Song v. Chertoff, No. 07cv0855, 2007 WL 3256201, *1 n.1 (S.D. Cal. November 1, 2007)

17  (holding that there was no jurisdiction under 8 U.S.C. §§ 1447(b), 1421(c) or "under the provisions cited

18  in his responsive brief"); Yasmeh v. Mukasey, No. 08cv0024-H, slip op., attached as Ex. G (S.D. Cal.

19  April 1, 2008) (same). Similarly here, Defendants may not schedule Plaintiff's interview until USCIS

20  receives the results of the criminal background investigation from the FBI. 8 C.F.R. § 335.2(b). The

21  parties agree that USCIS has not received those results. Complaint at ¶ 9; Ex. A at ¶¶ 22-23. As such,

22  the Court does not have jurisdiction to order USCIS to proceed to the examination.

23          2.   Federal Question Statute Does Not Vest the Court with Jurisdiction

24        Plaintiff asserts the Court has jurisdiction under 28 U.S.C. § 1331, the federal question statute.

25  Under this statute, a federal court has subject matter jurisdiction where (1) the claim turns on an

26  interpretation of the laws or Constitution of the Untied States, and (2) the claim is not "patently without

27  merit." Saleh v. Ridge, 367 F. Supp. 2d 508, 511 (S.D.N.Y. 2005). Here, Plaintiff's complaint fails on

28  the second prong. As discussed above, Plaintiff's application for naturalization has not been denied and

he has not been examined which leaves him without a mechanism for judicial review. See

1 | 8 U.S.C. §§ 1147(a)-(b).  Furthermore, Plaintiff may only be examined after his FBI background check

2 | has been completed.  See 8 C.F.R. § 335.2(b).  Accordingly, as Plaintiffs' FBI name check remains

3 | pending, his Complaint is without merit and should be dismissed for lack of subject matter jurisdiction.

4 | <center>2.    The Mandamus Act Does Not Provide Jurisdiction</center>

5 |      The Mandamus Act provides district courts with original jurisdiction of "any action in the nature

6 | of mandamus to compel an officer or employee of the United States or any agency thereof to perform a

7 | duty owed to the plaintiff." 28 U.S.C. § 1361.  However, the availability of mandamus is limited.  See

8 | Cheney v. United States District Court for the District of Columbia, 542 U.S. 367, 392 (2004)

9 | (Stevens, J., concurring).  "Mandamus is an extraordinary remedy and is available to compel a federal

10 | official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is

11 | nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other

12 | adequate remedy is available." Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003) (quoting

13 | Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1998)).  Relief through § 1361 is only appropriate where the

14 | action to be compelled is nondiscretionary. 28 U.S.C. § 1361; Sung v. Ashcroft, 76 Fed. Appx. 138, 139

15 | (9th Cir. 2003) (citing Kildare, 325 F.3d at 1084).  Plaintiff's Complaint does not resemble those

16 | extraordinary cases in which the Ninth Circuit has held that "drastic" mandamus relief is appropriate.

17 | See, e.g., Barton v. United States District Court, 410 F.3d 1104, 1106 (9th Cir. 2005) (issuing a writ of

18 | mandamus to protect attorney-client privilege); Myers v. United States District Court, 620 F.2d 741

19 | (9th Cir. 1980) (issuing a writ of mandamus to protect constitutional right to a jury trial).

20 |      Here, Plaintiff cannot establish jurisdiction under Section 1361 because Plaintiff's claim is neither

21 | clear nor certain and the official's duty is not so plainly prescribed as to be free from doubt.  The

22 | background investigation required in connection with Plaintiff's application is ongoing. Ex. A, ¶ 22.

23 | Congress specifically prohibited Defendants from adjudicating Plaintiff's application until they receive

24 | a completed background check from the FBI. See 111 Stat. at 2448-49.  Thus, Defendants cannot act on

25 | Plaintiff's application until they receive a completed background investigation. See Li v. Chertoff, 482

26 | F. Supp. 2d 1172, 1178 (S.D. Cal. 2007).  Contrary to Plaintiff's allegations of a refusal to act,

27 | Defendants are completing their duty to process Plaintiff's application in accordance with law. See Ex.

28 | A, ¶¶ 4, 22-26; Ex. E, ¶ 44.  Defendants have no duty to expedite a law enforcement background

investigation because Plaintiff desires the results immediately.  Further, Plaintiff's reliance on Defendant

1  USCIS's website documenting interview times for applicants filed after the plaintiff is misplaced because

2  the interviews scheduled are for applicants that have received completed background investigations from

3  the FBI.  Because Defendants are prohibited from acting on Plaintiff's application until they receive a

4  completed background check, Plaintiff cannot establish a clear and certain claim for relief or that

5  Defendants have a plainly prescribed duty to act on his application.  Accordingly, Plaintiff is not entitled

6  to relief under Section 1361 and the Complaint should be dismissed for lack of jurisdiction.

7                    3.    The Administrative Procedure Act And The Declaratory Judgment Act
                            Do Not Vest This Court With Jurisdiction
8

9          None of the other statutes cited by Plaintiffs provide the Court with jurisdiction.[4/]  See Complaint

10  at ¶ 5.  The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), does not provide an independent basis

11  for jurisdiction; rather, it only expands the range of remedies available in federal courts.  Skelly Oil Co.

12  v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).  Similarly, the Administrative Procedure Act,

13  5 U.S.C. § 701 ("APA"), et seq., does not provide an independent jurisdictional basis.  Califano v.

14  Sanders, 430 U.S. 99, 107 (1977); Staacke v. U.S. Department of Labor, 841 F.2d 278, 282 (9th Cir.

15  1988).  Rather, it merely provides the standards for reviewing agency action once jurisdiction is

16  otherwise established.  Staacke, 841 F.2d at 282.  Furthermore, judicial review under the APA is

17  specifically  precluded  where  "agency  action  is  committed  to  agency  discretion  by  law."

18

19          [4/]       The All Writs Act also does not provide this Court with jurisdiction over the subject
    matter of Plaintiff's Complaint or permit the Court to order the requested relief.  Plaintiff's Complaint
20  improperly pleads § 1651 as a basis for his requested relief.  See id.; see also Kerr v. United States Dist.
    Court, 426 U.S. 394, 402-03 (1976).  The All Writs Act provides that Article III courts "may issue all
21  writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and
    principles of law."  28 U.S.C. § 1651.  "The Supreme Court has explained that only 'exceptional
22  circumstances  amounting  to  a  judicial  usurpation  of  power  will  justify  the  invocation  of  this
    extraordinary remedy.'"  United States v. Ye, 436 F.3d 1117, 1121 (9th Cir. 2006) (quoting Will v.
23  United States, 389 U.S. 90, 95 (1967)).  Applied to Article II conduct, the use of the All Writs Act is
    exceedingly rare.  See Confederated Tribes v. Bonneville Power Admin., 342 F.3d 924, 930 (9th Cir.
24  2003); Public Util. Comm'r v. Bonneville Power Admin., 767 F.2d 622, 630 (9th Cir. 1985) (explaining
    that the "preemptory writ of mandamus has traditionally been used in federal courts to review nonfinal
25  district court orders and is used only in exceptional circumstances").  "The circumstances that will
    justify  our  interference  with  non-final  agency  action  must  be  truly  extraordinary,  for  this  court's
26  supervisory province as to agencies is not as direct as our supervisory authority over trial courts."  Id.
    (quoting Public Util. Comm'r, 767 F.2d at 630).  Plaintiff does not request that the Court issue a writ to
27  protect the jurisdiction of the Court or to effectuate the Court's judgment, nor may his Complaint be
    read to pray for the relief that be properly granted by the All Writs Act.  See Confederated Tribes,
28  342 F.3d at 930; Ye, 436 F.3d at 1121-22 (establishing a five factor test to determine whether mandamus
    relief may arise under § 1651); see also United States v. United States Dist. Court, 464 F.3d 1065, 1068-
    69 (9th Cir. 2006).

1  8 U.S.C. § 701(a)(2).  "Agency action," as defined under the APA, also includes "a failure to act."

2  5 U.S.C. § 551(13).

3       The APA may confer jurisdiction on the Court where a person "suffering a legal wrong . . . or

4  adversely affected or aggrieved" complains of agency action or inaction.  5 U.S.C. § 702.  However, such

5  a claim may only arise where the plaintiff "asserts that an agency failed to take a discrete agency action

6  that [the agency] is required to take."  Mustafa v. Pasquerell, 2006 WL 488399 at * 2 (W.D. Tex. Jan.

7  10, 2006) (citing Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004)).  Plaintiff's allegation

8  that his application has not been adjudicated since April 2006 fails to satisfy this standard as a matter of

9  fact and law.  First, the processing of his naturalization application is ongoing.  Ex. A at ¶¶ 22-26.

10  Second, "Section 704 limits judicial review to only those, agency actions made reviewable by statute.

11  The APA excludes from coverage those agency decisions which are . . . committed to agency discretion

12  by law."  Akpojiyovwi v. Acosta, No. H-04-3495,  2005 WL 1668133, at *2 (S.D. Tex. Jul. 15, 2005)

13  (citing, in relevant part, 5 U.S.C. § 701 (a) (2)) (internal footnote and citation omitted).

14       Plaintiff asks the Court to order the completion of his background investigation and schedule him

15  for an interview.  In fact, the FBI is working to complete Plaintiff's name check and background

16  investigation.  See Ex. E, ¶ 44; FBI-USCIS News Release, attached as Ex. C.  USCIS cannot complete

17  its review of Plaintiff's application, schedule him for an interview, or adjudicate the application until the

18  necessary background checks are complete.  See 8 C.F.R. § 335.2(b); Ex. A, ¶ 23.  APA review of how,

19  or how quickly, Defendants perform this important national security function is unavailable in this case.

20       It is well-established that courts generally have no power to order the Executive to undertake a

21  particular investigation absent some statutory provision conferring this authority.  See, e.g., United States

22  v. Ramos, 933 F.2d 968, 971 n.1 (11th Cir. 1991) (explaining that "[c]riminal investigations are an

23  executive function within the exclusive prerogative of the Attorney General's Office") (citation omitted)).

24  Where an agency possesses discretion regarding the manner and time of performance of its functions,

25  courts may only direct the agency "to take action upon a matter, without directing how it should act."

26  Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (emphasis in original) (internal citation

27  omitted).  Here, Plaintiff's Complaint admits that he has been informed that the processing of his

28  application is pending, awaiting the results of the background investigation. Complaint at ¶ 9. Moreover,

both the USCIS and the FBI are working toward completing pending naturalization applications and

recently reduced the projected processing times for naturalization applications. <u>See</u> USCIS News Release, attached as Ex. D (reducing the average processing times by three months). In fact, USCIS and FBI issued a joint plan to eliminate backlog on FBI namechecks and assert that namechecks pending more than two years should be completed by July 2008. <u>See</u> Ex. C. Thus, Plaintiff's namecheck, which has been pending for about two years, should be completed in the near future. On such a record, where submitted evidence avers that the necessary investigation is pending, APA review is unavailable.

Similarly, APA review is unavailable to compel the FBI to complete a namecheck because no statute or regulation imposes any deadline for the FBI to complete a criminal background check. <u>Shalabi v. Gonzales</u>, 2006 WL 3032413, at * 5 (E.D. Mich. Oct. 23, 2006)("[C]ourts are ill-equipped to conduct the type of criminal background checks with which the FBI has been tasked, and to conduct a hearing without the benefit of a completed background check 'would contravene Congress's intent that an FBI background is to be completed prior to the adjudication of every naturalization application.'"). The FBI's discretion in conducting immigration-related name checks is underscored by legislation requiring action to reduce the length of personnel-related background checks. <u>See</u>, <u>e.g.</u>, Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring 90% of personnel security clearances to be completed within 60 days "to the extent practical"). Congress could have enacted deadlines for the performance of the FBI's immigration name checks and could have subjected this process to judicial review. Congress's decision not to do so indicates that this process remains well within the FBI's sole discretion, and the FBI's decisions regarding when and how to complete adjustment of status name checks are not subject to judicial scrutiny. <u>Cf</u>. <u>Haig v. Agee</u>, 453 U.S. 280, 300 (1981) ("congressional acquiescence may sometimes be found from nothing more than silence in the face of an administrative policy"). Such judicial deference is particularly appropriate in security and immigration matters, both of which are implicated in this case. <u>See</u>, <u>e.g.</u>, <u>INS v. Aguirre-Aguirre</u>, 526 U.S. 415, 425 (1999) ("[J]udicial deference to the executive branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'") (quoting <u>INS v. Abudu</u>, 485 U.S. 94, 110 (1988)). Accordingly, this Court lacks jurisdiction under the APA.

///

**B.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Alternatively, if the Court finds that it has jurisdiction, Plaintiff still fails to state a claim upon which relief may be granted.  Plaintiff's application may not be decided because his background investigation is not yet complete.  Had it wished to do so, Congress could have enacted deadlines for the performance of the FBI's background investigation and subjected this process to judicial review.  In the absence of such a directive, USCIS has no clear, mandatory duty to adjudicate Plaintiff's application at any particular time, or, in effect, to give preferential treatment to his application by processing it out of the order in which it was received.

Further, Plaintiff has failed to establish that the FBI can be compelled to complete his background investigation.  There is no statutory or regulatory requirement that the FBI complete the background check of an applicant within a certain time limit.  See Norton, 542 U.S. at 63; see, e.g., Wei Tan v. Gonzalez, No. 07-cv-00133, 2007 WL 1576108, at *4 (D. Colo. May 30, 2007) ("[T]he Court has been presented with no authority which would allow it to require the FBI to conduct a security background check more expeditiously, absent showing of complete inaction by the FBI"); Wang v. Gonzales, No. 07cv0165, 2007 WL 1299871, at *3 (S.D. Cal. Apr. 30, 2007) ("Only the FBI and USCIS are in a position to know what resources are available to conduct the background checks and whether an expedited background check is feasible or efficient in any particular case."); Li, 482 F.Supp.2d at 1179 ("Plaintiff has not pointed to any statute or regulation requiring the FBI to complete her name check in any period of time, reasonable or not."); Shalabi v. Gonzales, No. 4:06cv866, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23, 2006) ("There is no statute or regulation which imposes a deadline for the FBI to complete a criminal background check"); Nguyen v. Gonzales, No. H-07-0048, 2007 WL 713043, *4 (S.D. Tex. Mar. 6, 2007) ("The enormous number of name checks submitted to the FBI also counsels against judicial intervention in a case such as this one.").

Moreover, granting Plaintiff's request to compel the processing of routine immigrant applications out of order would have several negative repercussions.  It would unfairly favor applicants with the means to hire an attorney and/or file federal mandamus actions.  Applicants without such means would suffer further delays, as other later-filed applications were given court-mandated preferential treatment. The use of mandamus would shorten delay for some, only to lengthen it for others.

1    Lastly, Plaintiff has failed to establish that he has suffered any cognizable injury. <u>See</u> <u>Lujan v.</u>

2    <u>Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992). While his application is pending, Plaintiff retains

3    all of the rights and benefits of a lawful permanent resident, including the right to work and travel freely.

4    <u>See</u> Ex. A, ¶ 26. Because he has no clear right to immediate adjudication and Defendants' duty is purely

5    discretionary, the extraordinary relief provided by mandamus is not warranted here. Accordingly, the

6    Court should dismiss the Complaint for failure to state a claim upon which relief may be granted.

7         C.    IF JURISDICTION EXISTS, PLAINTIFF'S CASE SHOULD BE
                <u>REMANDED TO USCIS</u>

8

9    The Secretary of Homeland Security has "sole authority to naturalize persons as citizens of the

10    United States." 8 U.S.C. § 1421(a); 6 U.S.C. § 271(b). USCIS is the federal agency charged with

11    processing applications for naturalization. <u>See</u> 8 U.S.C. § 1421 et seq. USCIS is required to conduct a

12    personal investigation and examination of each applicant for naturalization. <u>See</u> 8 U.S.C. §§ 1446(a)-

13    (b); 8 C.F.R. §§ 335.1-335.2. In situations in which there has been an examination by USCIS and 120

14    days elapse without a decision whereby district court jurisdiction is not in dispute, Congress provided

15    the Court with two options. <u>See</u> 8 U.S.C. § 1447(b). The Court retains exclusive jurisdiction over the

16    application and may either determine it or remand it to USCIS with appropriate instructions. <u>Id.</u>; <u>see also</u>

17    <u>United States v. Hovsepian</u>, 359 F.3d 1144, 1160.

18    Within the 8 U.S.C. § 1447(b) context, when there is a basis for jurisdiction, courts in this District

19    have overwhelmingly elected to remand applications for naturalization to USCIS with instructions to

20    adjudicate the application as expeditiously as possible after the FBI's completion of the name check. <u>See</u>

21    <u>Somo v. Gonzales</u>, No 07cv0637, 2007 WL 2700948, *3 (S.D. Cal. Sept. 10, 2007); <u>Penalosa v. U.S.</u>

22    <u>Citizenship & Immigration Servs.</u>, No. 07cv0808, 2007 WL 2462118, *3 (S.D. Cal. Aug. 28, 2007); <u>Ma</u>

23    <u>v. Chertoff</u>, No. 07cv0033, 2007 WL 2462103, *3 (S.D. Cal. Aug. 27, 2007); <u>Yang v. Chertoff</u>, No.

24    07cv0240, 2007 WL 1830908, *4 (S.D. Cal. June 25, 2007); <u>Ghazal v. Gonzales</u>, No. 06cv2732, 2007

25    WL 1971944, *4 (S.D. Cal. June 14, 2007); <u>Wang</u>, 2007 WL 1299871 at *3. There are several

26    advantages to remanding this matter to USCIS. The application will be adjudicated by the federal agency

27    best equipped to evaluate the application. It will accomplish the congressional intent of uniform

28    examination. <u>See</u> 8 U.S.C. § 1443(a) (the examination "shall be uniform throughout the United States").

    Further, it will leave Plaintiff with an avenue for judicial review under 8 U.S.C. § 1421 (c) if the

1  application is ultimately denied by USCIS.

2      The instant Complaint is not a § 1447(b) matter.  However, if this Court finds that jurisdiction

3  exists, it is appropriate to remand the matter to USCIS when the pendency of an FBI investigation

4  precludes the interview of an N-400 applicant.  Remand permits the agency to render a decision in the

5  first instance based upon a complete administrative record.  See Khelifa v. Chertoff, 433 F.Supp. 2d 836,

6  843-44 (D. Mich. 2006) (noting that CIS is better equipped than the federal courts to evaluate background

7  investigation information, conduct follow up where necessary, and complete adjudications).  In addition,

8  remand does not deprive an applicant of judicial review, if an application is ultimately administratively

9  denied.  See 8 U.S.C. § 1421(c) (permitting de novo judicial review of a denied application for

10 naturalization).  Such an approach favors basic principles of administrative review as well as judicial

11 economy because if judicial review is required under § 1421(c),  the Court will have the benefit of the

12 final and complete administrative record.

13     Here, USCIS undertook the processing of his N-400 immediately.  Ex. A, ¶ 4.  In addition to

14 reviewing the information provided by Plaintiff, USCIS complied with agency directives and instituted

15 a series of law enforcement checks.  Id. at ¶¶ 7, 22-23.  Accordingly, if the Court determines that

16 jurisdiction is appropriate, then Defendants submit that remand is the procedure that honors the

17 congressionally mandated administrative process applicable to naturalization applications, favors judicial

18 economy, and does not deprive Plaintiff of judicial review in the event that, after a complete and requisite

19 background check, his application is denied. 8 U.S.C. § 1421(c)

20                              IV.  CONCLUSION

21     For the foregoing reasons, Defendants respectfully ask the Court to dismiss Plaintiff's Complaint.

22 Alternatively, the Court should remand Plaintiff's Complaint to USCIS for adjudication after completion

23 of the necessary background investigation.

24     Dated: April 28, 2008                     Respectfully submitted,

25

26                                              KAREN P. HEWITT
                                                United States Attorney

27                                              s/  Raven  M.  Norris
                                                RAVEN M. NORRIS
28                                              Assistant U.S. Attorney
                                                Attorneys for Defendants
                                                Email: Raven.Norris@usdoj.gov